## BARNES v. UNITED STATES.
### No. 19208.

District Court, E. D. Pennsylvania.
Jan. 25, 1938.

Barnes, Biddle & Myers, by Charles Myers, of Philadelphia, Pa., for plaintiff.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and A. Steele Hooper, Sp. Assts. to Atty. Gen., for the United States.

MARIS, District Judge.

This is a suit under the Tucker Act, 28 U.S.C.A. § 41 (20), to recover income tax alleged to have been erroneously paid by the plaintiff for the year 1932. From the evidence I make the following special findings of fact:

The plaintiff, who is a resident of Devon, Chester county, Pa., in the year 1932 owned 1,000 shares of stock of Westmoreland, Inc., and received dividends thereon during the year 1932 in the sum of $1,400.

Westmoreland, Inc. (hereinafter called the new company), was organized on June 3, 1929, in connection with a nontaxable reorganization of the Westmoreland Coal Company (hereinafter called the old company). In the reorganization, which took place as of July 1, 1929, the old company transferred to the new company approximately 60 per cent. of its net assets, and the new company issued its entire capital stock, consisting of 200,000 shares without par value, to the stockholders of the old company pro rata. At the same time the old company converted its outstanding capital stock, consisting of 200,000 shares of the par value of $50 each, into an equal number of shares without par value, but having a stated value of $25 each. As a result of the reorganization the shareholders of the old company received in exchange for each share of the par value of $50 which they held, one share of stock of the new company without par value and one share of stock of the old company without par value.

On July 1, 1929, prior to the transfer to the new company, the old company had earnings or profits accumulated subsequent to February 28, 1913, but undistributed though available for distribution, in excess of $2,058,000, leaving out of account a stock dividend of $2,500,000 which had been distributed in 1923. These accumulated earnings were not shown on the books of the old company, however. The old company continued in business after the reorganization and on December 31, 1929, it had a book surplus of $1,528,320.75. During the years 1930, 1931, and 1932, the old company earned $36,479.26, and paid dividends totaling $195,115.

The assets transferred to the new company amounted to $10,105,608.12, made up as follows:

| | | |
|---|---:|---:|
| Cash | | $ 589,459.32 |
| Accounts receivable | | 370.00 |
| Bonds of various States | | 365,642.00 |
| Bonds of the United States | | 863,885.63 |
| Bonds of domestic corporations | | 45,865.00 |
| Prepaid insurance | | 21.16 |
| Land | | 8,101,076.90 |
| Buildings | $2,624.46 | |
| Less reserve for depreciation | 131.22 | 2,493.24 |
| Treasury stock | | 27,844.45 |
| Accrued interest receivable | | 8,950.42 |
| | | $10,105,608.12 |

As of July 1, 1929, the old company transferred to the new company which assumed and entered on its books liabilities amounting to $9,320.42. Of the excess of the assets over the liabilities so transferred, in other words, its net worth, amounting on July 1, 1929, to $10,096,287.70, $2,000,000.00 was credited on its books to the stated capital applicable to its 200,000 shares of stock, $4,201,526.75 was credited to "Coal land appreciation," and $3,894,760.95 was credited to "Transferred surplus." Of the sum last mentioned, $894,760.95 represented surplus transferred to the new company on the books of the old company.

From June 3, 1929, to October 1, 1931, inclusive, the new company earned $95,-

806.95 and paid dividends totaling $888,-466.60. On January 1, 1932, the undistributed profits of the new company earned by it since February 28, 1913 (in fact all earned since October 1, 1931), amounted to $12,685.08. Between January 1, 1932, and October 1, 1932, the new company earned profits of $32,084.91. These earnings or profits aggregating $44,769.99 were all distributed as part of dividends paid in 1932 on January 2, April 1, July 1, and October 1, which dividends amounted in all to $268,953.80. The balance of these dividends, amounting to $224,183.81, were charged against the transferred surplus account of the new company hereinabove described. Of the dividends amounting to $1,400 received by the plaintiff from the new company in 1932, 16.65 per cent., or $233.10, was paid from profits of the new company earned by it since February 28, 1913, and 83.35 per cent., or $1,166.90, was paid from the transferred surplus account of the new company hereinabove described.

On March 14, 1933, plaintiff filed his income tax return for the year 1932, including therein as dividends received from the new company the sum of $223.80. The plaintiff did not include in his gross income the balance of said dividends amounting to $1,176.20. Upon the audit of his return the Commissioner ruled that the entire amount of the dividend, $1,400, was taxable as such. He accordingly determined a deficiency against the plaintiff in the sum of $498.65, which, together with interest of $45.94, was assessed against the plaintiff and paid by him on October 5, 1934. On March 28, 1935, plaintiff filed a claim for the refund of the sum of $544.59 so paid by him, which the Commissioner rejected on June 19, 1935. The plaintiff thereafter brought the present suit.

Other facts which may be material appear in the stipulation of facts filed by the parties which is incorporated herein by reference.

## Discussion.

The question presented by these facts is whether, in the nontaxable reorganization of 1929, 60 per cent. of the post 1913 accumulated earnings of the old company were transferred to the new company so as to constitute its earnings within the meaning of section 115 (a) of the Revenue Act of 1932, 26 U.S.C.A. § 115 (a) and note. The section in question provides that: "The term 'dividend' * * * means any distribution made by a corporation * * * out of its earnings or profits accumulated after February 28, 1913."

If such accumulated profits of the old company, amounting to more than $1,234,-800, were transferred to the new company and became its earnings and profits, it necessarily follows from the facts of the case that all the dividends received by the plaintiff in 1932 were paid out of the earnings or profits of the new company, and were, therefore, fully taxable as dividends. If, on the other hand, no part of the accumulated earnings of the old company became earnings or profits of the new company, then only 16.65 per cent. of the dividends received by the plaintiff from the new company in 1932, or $233.10, represented taxable dividends paid out of profits, and the balance of the dividends, amounting to $1,166.90, must be held to represent a distribution not out of profits which, under paragraph (d) of section 115 of the Revenue Act, 26 U.S.C.A. § 115 (d), and note, is to be applied in reduction of the cost basis of the stock.

Were a portion of the accumulated earnings of the old company transferred in the reorganization to the new company so as to become its earnings for dividend purposes? If this question were open I would, in accord with the views ably expressed by Member Lansdon of the Board of Tax Appeals in his dissenting opinion in Crocker v. Commissioner, 29 B.T.A. 773, 778, be inclined to answer it in the negative. Certainly the language of paragraph (a) of section 115, that "the term 'dividend' * * * means any distribution made by a corporation * * * out of its earnings or profits accumulated after February 28, 1913," would seem to refer to profits earned by the company in question. Furthermore, it would appear that paragraph (d) of section 115 makes express provision for a distribution by a corporation which is not out of its earnings or profits, and I find no provision in the act expressly authorizing the Commissioner to disregard the corporate entities to the extent necessary to treat as earnings of the new company what is to it unquestionably capital if its corporate entity is to be preserved.

However, this question is not open, for it has been squarely ruled in favor of the government by the Circuit Courts of Appeals for the Second, Fifth, and Ninth Circuits, and by the Board of Tax Appeals. Commissioner v. Sansome, 2 Cir., 60 F.2d

931, certiorari denied, 287 U.S. 667; United States v. Kauffmann, 9 Cir., 62 F.2d 1045; Baker v. Commissioner, 2 Cir., 80 F.2d 813; Murchison's Estate v. Commissioner, 5 Cir., 76 F.2d 641, 642; Harter v. Helvering, 2 Cir., 79 F.2d 12; Crocker v. Commissioner, 29 B.T.A. 773. While it has not been directly passed on in this circuit, I am constrained by the authority of the cases cited to hold that the capital and surplus received by the new company in this case included earnings or profits which were its within the meaning of section 115 (a), although earned by its predecessor.

It is true that each of the cited cases involved a reorganization in which the old company, whose earnings were held to be transferred, divested itself of all of its assets and went out of business, while in the present case the old company divested itself of only 60 per cent. of its assets and continued in business with its remaining property. The government contends, however, that having transferred 60 per cent. of its assets in a nontaxable reorganization, 60 per cent. of its accumulated earnings were necessarily transferred also. The government points to the fact that up to the end of 1932 the new company had distributed in dividends over $1,000,000 in excess of its own earnings. Under these circumstances I think that the rule laid down in the cases to which I have referred applies, and that earnings in excess of $1,234,800 were transferred to the new company in the reorganization. Certainly the rule completely disregards both corporate form and financial condition as reflected by the corporate books. It has regard only for the realities of the situation. Here the new company's actions indicate that it accepted the reality of the transfer of earnings as a basis for the payment of dividends. I accordingly hold, under the facts of this case, that the dividends paid to the petitioner in the year 1932 by the new company were paid in whole from its earnings or profits, and were, therefore, taxable dividends within the meaning of the Revenue Act of 1932. Consequently, the action of the Commissioner in assessing and collecting an income tax upon these dividends was proper, and the plaintiff is not entitled to the refund thereof.

### Conclusions of Law.

The four distributions totaling $1,400, made by Westmoreland, Inc., to plaintiff in the year 1932, were in whole dividends within the meaning of section 115 (a) of the Revenue Act of 1932, 26 U.S.C.A. § 115 (a) and note, and were taxable as such.

The additional income tax for the year 1932, amounting with interest to $544.59, paid by the plaintiff on October 5, 1934, in respect of these dividends, was lawfully assessed and collected.

The plaintiff is not entitled to recover the sum of $544.59 from the defendant.

I accordingly find in favor of the defendant and against the plaintiff.