Rita G. **SHEPHARD**, Guardian of Susan Shephard, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15821.

United States Court of Appeals
Sixth Circuit.

Jan. 14, 1965.

William R. Bagby, Lexington, Ky. (Morris B. Floyd, Lexington, Ky., on the brief), for petitioner.

Robert H. Solomon, Atty., Dept. of Justice, Washington, D. C. (Lee A. Jackson, Melva M. Graney, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PHILLIPS and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

The Tax Court determined an income tax deficiency of $8,687.50 for the year 1958 against petitioner as transferee of the estate of Clarence E. Shephard, deceased.

Mr. Shephard, a resident of Columbus, Ohio, owned practically all of the capital stock of a small family corporation, Croppers Laundry, Inc. He entered into a contract to purchase this stock on January 31, 1944, for $29,000, making an initial cash payment of $8,000, and executing eighty-four promissory notes of $250 each, plus interest in the amount of $46.80, payable monthly. Although the stock was purchased personally by Mr. Shephard and registered in his name, the corporation became a joint obligor on these notes and executed a chattel mortgage on its physical assets as security therefor. The corporation paid most of the notes as they became due and advanced additional sums of cash to Mr. Shephard over a period of several years. Also, some of the notes were paid personally by Mr. Shephard as they fell due. In this way he acquired almost all of the capital stock of the corporation, partly with his own money and principally with money advanced by the corporation.[1]

The money expended by the corporation for the payment of notes which had been issued for the purchase of the stock, and for cash advances made to Mr. Shephard, were carried on the corporation books as "Accounts receivable, Clarence E. Shephard." Mr. Shephard made only two payments to the corporation on this account, totaling $3,050. The debit balance on this account as of the date of Mr. Shephard's death was $24,241.32.

For a number of years the books and records of the corporation had been kept and maintained in the office of the corporation's accountant, and entries were made by him and his employees as transactions occurred and came to his attention. When the accountant for the corporation made inquiry of the administrator of Mr. Shephard's estate concerning this account, the administrator in-

[1]. Twenty-five shares of stock were paid for by Mr. Shephard's sister-in-law. One qualifying share was held in the name of Scott Reed but actually belonged to Mr. Shephard. At his death Mr. Shephard was the recorded owner of 224 shares.

formed him that it would not be paid. The accountant thereupon charged off this account receivable against the corporation's earned surplus. This action was taken by the accountant on his own initiative, without authorization by the officers and directors of the corporation, but was reflected in financial statements submitted every four weeks by the accountant to the corporation. Mr. Shephard's estate was solvent, the principal assets being his shares of stock in the corporation and real estate valued at $25,000. No contention was made in the Tax Court or in this court that the debt was not fully collectible from the estate.

The Tax Court held that the cancellation of Mr. Shephard's indebtedness to the corporation constituted a distribution of property to his estate in 1958, and as such was a taxable dividend for that year, under Sections 301, 316(a) and 317 of the Internal Revenue Code of 1954.[2]

Petitioner contends that money paid out by the corporation constituted dividends in the year in which payments were made, and that the taxes due thereon have been barred by limitation.

It is undisputed that the payments of notes and other advances were carried on the books of the corporation as debts due from Mr. Shephard, and that Mr. Shephard recognized this indebtedness by making two payments thereon prior to his death. The petitioner made no showing before the Tax Court that Mr. Shephard declared any of these advances as income for tax purposes for any year during his lifetime.

The Tax Court said (omitting citations):

"Whereas the entries may have been made without specific instruction from the corporation acting through its officers, directors or stockholders, it is clear that shortly thereafter the corporation and the Estate knew about the action and accepted, ratified and affirmed it. Petitioner has produced no evidence to the contrary.

"The petitioner has not met her burden of proof either to establish that the respondent's determination was wrong, * * * or to support her contention that advances to Shephard from the corporation were

2. "26 U.S.C. § 301. Distributions of property

"(a) In General.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\* \* \* \* \*

"(c) Amount Taxable.—In the case of a distribution to which subsection (a) applies—

"(1) Amount constituting dividend.— That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

\* \* \* \* \*

"26 U.S.C. § 316. Dividend defined

"(a) General rule.—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, or

"(2) out of its earnings and profits of the taxable year (computed as of the

close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

"Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection. \* \* \*

"26 U.S.C. § 317. Other definitions

"(a) Property.—For purposes of this part, the term 'property' means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock)."

dividends in the years they were made. \* \* \* Both parties to the transaction prior to Shephard's death in 1957 treated the transaction as an indebtedness and not as a distribution of earnings. The corporation carried the account on its books as a receivable and for all of its fiscal years from 1945 through 1957 carried the balance due as an asset on its balance sheets.

\*     \*     \*     \*     \*

"The decedent recognized his debt to the company on at least two occasions by making payments on the account and the payments he made were reflected on the corporate books as credits against the balance then due. Petitioner produced no evidence as to how Shephard treated the advances to him on his own tax returns through the years if he did so at all, and we cannot assume in the absence of such evidence that he reported them as dividends at any prior time. Both parties therefore, so far as this record shows, always treated the transaction as one of corporate loans to the majority stockholder and the petitioner made no showing of other treatment by either party."

This court has held that cash withdrawals from a corporation made by a stockholder constitute taxable dividends in the taxable year during which corporate action was taken canceling or charging off such accounts against surplus. Hudson v. Commissioner of Internal Revenue, 99 F.2d 630 (C.A.6), cert. denied, 306 U.S. 644, 59 S.Ct. 584, 83 L.Ed. 1044; Cohen v. Commissioner, 77 F.2d 184 (C.A.6), cert. denied Rosenbaum v. Commissioner, 296 U.S. 610, 56 S.Ct. 129, 80 L.Ed. 433.

Petitioner contends that a "constructive dividend" requires proof of "economic benefit," relying upon Whitfield v. Commissioner, 311 F.2d 640 (C.A.5). It seems obvious to us that by the cancellation of this indebtedness there was an economic benefit both to the estate of Mr. Shephard and to petitioner as transferee.

It is our opinion that the findings of the Tax Court are not "clearly erroneous," Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218, but to the contrary are clearly correct.

The decision of the Tax Court is affirmed.